# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

RICHARD McGINNIS,

      Plaintiff,

      v.

UNITED STATES COLD STORAGE,

      Defendant.

Case No. 16-cv-8841

Judge John Robert Blakey

## MEMORANDUM OPINION AND ORDER

Plaintiff Richard McGinnis sued his former employer Defendant United States Cold Storage for permitting a hostile work environment and engaging in race discrimination in violation of Title VII of the Civil Rights Act, 42 U.S.C. § 2000(e) *et seq.*, and 42 U.S.C. § 1981. [34]. Defendant moved to dismiss. [38]. As explained below, this Court partially grants and partially denies the motion.

## I.    The Complaint's Allegations

Defendant provides temperature-controlled warehousing and transportation services nationwide. [34] ¶ 10. Plaintiff, an African-American man, began working for Defendant in April 2011 as part of a "transportation team," eventually becoming a transportation coordinator. *Id.* ¶¶ 8–9, 12. Plaintiff was the only black employee on his transportation team and his supervisor, Richard Beghy, was white. *Id.* ¶ 12.

When Plaintiff started with Defendant, his team worked "together in one small room," where everyone could "hear everyone else's conversations." *Id.* ¶13. Plaintiff claims that throughout his employment his coworkers and supervisors

1

intentionally and regularly "embarrassed, ridiculed, insulted, and demeaned" him. *Id.* ¶ 14. Plaintiff alleges that when the team learned of his hiring, his coworker Annie commented—in front of Beghy—that there would be "chicken bones and watermelon rinds" in the parking lot. *Id.* ¶ 15.[1] During "the first six to nine months" after Plaintiff started work, another coworker, Pam, responded angrily whenever Plaintiff asked her to complete "overshortage damage reports" (OSD reports), which Pam was responsible for filling out if any driver came up with overages, shortages, or damage to any goods. *Id.* ¶ 18. Pam did not react negatively when white members of the team asked for OSD reports; Beghy observed Pam's hostility to Plaintiff and never reprimanded her. *Id.* ¶¶ 19–20. Ultimately, Plaintiff learned to complete OSD reports to avoid interacting with Pam. *Id.* ¶ 21.

In early 2012, Plaintiff's coworker John yelled at Plaintiff to "keep his cotton picking hands off his fucking orders." *Id.* ¶ 22. When Plaintiff told John not to speak to him that way, Beghy told Plaintiff to "settle down," but failed to reprimand John. *Id.* ¶ 23. That same year, Beghy began answering emails directed to Plaintiff on which he was copied. *Id.* ¶¶ 24–25. Beghy did not answer other team member's emails, and told Plaintiff he stepped in on his emails because Plaintiff did not have "enough intelligence or tact to respond professionally," and took too long to do so. *Id.* ¶¶ 25–26. Meanwhile, Plaintiff's coworkers often discussed the ongoing 2012 presidential campaign, making derogatory comments about President Barack Obama, First Lady Michelle Obama, and African-Americans generally. *Id.* ¶ 28. Beghy knew about these comments and never addressed them. *Id.* ¶ 29.

---

[1] This Court uses first names when Plaintiff's complaint omits an individual's surname.

At the end of 2012, Defendant moved to a new office where Plaintiff and his coworkers no longer worked in such close quarters. *Id*. ¶ 30. Plaintiff asked Defendant's transportation manager, Don Romniak, to seat him away from Pam or Annie. *Id*. ¶ 31. Romniak, who is white, granted Plaintiff's request but also asked Defendant "to install a window in his office" so he could "keep an eye on Plaintiff." *Id*. ¶ 32. Plaintiff does not allege that Romniak got the window. *Id*.

In 2013, an employee of one of Defendant's carrier companies asked Plaintiff why Defendant had not given the carrier more assignments. *Id*. ¶ 33. Plaintiff told the employee that Defendant's other carriers had better track records, and the employee responded with an email calling Plaintiff an "asshole." *Id*. ¶¶ 33–34. Plaintiff responded—by email—calling the employee a "cry baby." *Id*. ¶ 34. One of Plaintiff's coworkers then sent Plaintiff's email to Defendant's human resources representative, Nicole, omitting the initial insult from the carrier employee. *Id*. ¶ 37. Nicole sent the email to Defendant's General Manager, Gregg, and Plaintiff received a two-day suspension as a result. *Id*. ¶¶ 35–36. Both Nicole and Gregg are white. *Id*. ¶¶ 35, 36. Plaintiff became noticeably depressed following this suspension. *Id*. ¶¶ 38–40. Later that year, Plaintiff told Gregg he was upset about the suspension; Gregg told him to stop moping and be a good "boy." *Id*. ¶ 40.

At some point in 2014, Plaintiff put a sign in the break room asking employees to wash and refill the communal coffee pot when they finished the previous pot. *Id*. ¶ 42. For several months, Plaintiff would put up the sign and Annie would rip it down. *Id*. ¶¶ 42–43. Plaintiff reported this to Beghy and

Romniak, who took no action until Plaintiff appealed to the Regional Manager, at which point Romniak announced to the team that the sign should stay up. *Id.* ¶¶ 43–46. Defendant never reprimanded Annie for her conduct, though Plaintiff "interpreted" her behavior as "predicated upon" his race. *Id.* ¶ 47.

In April 2015, a carrier called Beghy to complain that Plaintiff failed to include the carrier in a certain email. *Id.* ¶ 48. Plaintiff had, in fact, included the carrier on the email, and, frustrated that the carrier waited to the end of the work day to raise the issue, exclaimed: "Why the fuck did he wait until the last minute to say something!" *Id.* ¶ 49. According to Plaintiff, Defendant's employees commonly used that profanity and no employee had ever been "severely disciplined" for it. *Id.* ¶¶ 50–52. Plaintiff's coworker John once used the term in an argument with a carrier and was suspended, but not fired. *Id.* ¶ 53. Annie complained about Plaintiff's language to Nicole, after which Romniak and Beghy gave Plaintiff a one-day suspension. *Id.* ¶¶ 54–55. During Plaintiff's suspension,[2] Nicole called and told him he was fired effective immediately. *Id.* ¶ 56. Before his termination, Plaintiff had never been disciplined for using inappropriate language, or subjected to "progressive discipline." *Id.* ¶ 60–61.

Plaintiff filed a discrimination charge with the Equal Employment Opportunity Commission (EEOC) on May 24, 2016. *Id.* ¶ 5; [34-1] at 2. Plaintiff's EEOC charge alleged that Defendant discriminated against him because of his race,

---

[2] Plaintiff's complaint leaves the timeline of his suspension somewhat unclear. His allegations suggest that his suspension and termination occurred soon after his inappropriate comment in April 2015; however, he also states that defendant terminated him around November 11, 2015. *See* [34] ¶¶ 8, 48–56.

stating: "During my employment, I was subjected to different terms and conditions than non-black employees including, but not limited to, being suspended for foul language. On or about November 11, 2015, I was discharged." [34-1] at 2.

Plaintiff received his right-to-sue notice from the EEOC on June 13, 2016. [34] ¶ 5; [34-1] at 3. Plaintiff timely filed this suit on September 12, 2016. [34] ¶ 5; [1]. He amended his complaint in November 2017, [34], and Defendant moved to dismiss, [38].

## II.  Legal Standard

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1080 (7th Cir. 1997). To survive a motion to dismiss, a complaint must provide a "short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), giving the defendant "fair notice" of the claim "and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). A complaint must also contain "sufficient factual matter" to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556).

In evaluating a complaint, this Court draws all reasonable inferences in the plaintiff's favor and accepts all well-pleaded allegations as true. *Id.* This Court

does not, however, automatically accept a complaint's legal conclusions as true. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

## III.  Analysis

Defendant seeks to dismiss Plaintiff's claims on the grounds that: (1) Plaintiff failed to exhaust the administrative remedies for his Title VII hostile work environment claim; (2) Plaintiff's claims are time-barred; and (3) Plaintiff fails to state a claim.  [39].  This Court addresses each contention in turn.

### A.    Failure to Exhaust

Defendant argues that Plaintiff's Title VII hostile work environment claim fails because it exceeds the scope of his EEOC charge.  [39] at 3.  Generally, plaintiffs "may not bring claims under Title VII that were not originally included in the charges made to the EEOC."  *Sitar v. Ind. Dep't of Transp.*, 344 F.3d 720, 726 (7th Cir. 2003).  An exception permits plaintiffs to pursue claims not expressly included in their EEOC charge if they are "like or reasonably related to" the allegations in the EEOC charge "and growing out of such allegations."  *Moore v. Vital Prods., Inc.*, 641 F.3d 253, 256 (7th Cir. 2011) (internal quotation marks omitted).  Claims are "like or reasonably related" when they "describe the same conduct and implicate the same individuals."  *Id.* at 257 (quoting *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 501 (7th Cir. 1994)).  Whether Plaintiff's claims fall within the scope of his EEOC charge is a question of law.  *See id*.

Here, Plaintiff's EEOC charge states that Defendant subjected him "to different terms and conditions" because of his race, "including, but not limited to, being suspended for foul language."  [34-1] at 2.  The charge also references

Plaintiff's termination. *Id.* It does not mention harassment or the racially charged comments from Plaintiff's coworkers now detailed in his complaint.

Ordinarily, charges of discrimination and harassment are not sufficiently "like or reasonably related" to "permit an EEOC charge of one type of wrong to support a subsequent civil suit for another." *Sitar*, 344 F.3d at 726 (distinguishing sex discrimination and sexual harassment claims); *see also Moore*, 641 F.3d at 257 (distinguishing harassment and discriminatory discharge claims). An exception arises where the plaintiff's claims are "so related and intertwined in time, people, and substance that to ignore that relationship for a strict and technical application of the rule would subvert" the purpose of Title VII. *Sitar*, 344 F.3d at 726 (internal quotation marks omitted).

Plaintiff's present claims fall within the general rule: he does not mention harassment in his EEOC charge and the allegations supporting his hostile work environment claim are not closely "intertwined" with the events referenced in the EEOC charge. *See id.* The only specific actions noted in Plaintiff's EEOC charge involve his 2015 suspension and termination, which do not stem from "the same conduct" underlying his hostile work environment claim. *Moore*, 641 F.3d at 257. Rather, Plaintiff's allegations concerning harassment center on his coworkers' comments months before his 2015 suspension and discharge. *See* [34] ¶¶ 18, 22–32, 33–37, 40, 43; *see also Sitar*, 344 F.3d at 726–27 (harassment claim did not reasonably relate to the plaintiff's retaliatory discharge claim because they involved different conduct and alleged harassment occurred over three months earlier).

Plaintiff's EEOC charge includes a general reference to the fact that he was subjected "to different terms and conditions" because of his race. [34-1] at 2. But a "brief and very general" EEOC charge cannot sustain subsequent claims for "*any* related conduct that took place in connection" with Plaintiff's employment. *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992) (emphasis added). Where, as here, a plaintiff completely failed to mention a type of claim or the factual allegations underpinning that claim, that claim was not properly presented to the EEOC. *See id.* at 1111–12. A bare reference to racial discrimination cannot sustain a subsequent claim for a hostile work environment. *See id.*; *Smith v. Rosebud Farmstand*, 909 F. Supp. 2d 1001, 1005 (N.D. Ill. 2012) (references to suspension and reduced hours did not sustain subsequent harassment claim); *Gbur v. City of Harvey*, 835 F. Supp. 2d 600, 626 (N.D. Ill. 2011) (barring hostile work environment claim unmentioned in EEOC charge).

Accordingly, this Court dismisses Plaintiff's Title VII hostile work environment claim. *See Moore*, 641 F.3d at 258. This determination, however, does not affect Plaintiff's hostile work environment claim under Section 1981, which has no exhaustion requirement. *See Macias v. Bakersfield Rest.*, 54 F. Supp. 3d 922, 927 (N.D. Ill. 2014).

## B. Limitations Periods

### 1. Title VII Claim

Defendants correctly note that in Illinois, plaintiffs must file Title VII discrimination charges with the EEOC within 300 days of their employer's alleged misconduct. *See Bass v. Joliet Pub. Sch. Dist. No. 86*, 746 F.3d 835, 839 (7th Cir.

2014) (citing 42 U.S.C. § 2000e–5(e)(1); *Mohasco Corp. v. Silver*, 447 U.S. 807 (1980)). That clock begins running from the date of the employer's challenged acts. *Id*. An exception applies where the alleged misconduct presents a continuing violation rather than discrete acts. *Id*. Hostile work environment claims often fall within the scope of the continuing violation doctrine, since by their nature such claims generally arise from "the cumulative effect of individual acts." *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 724 (7th Cir. 2004) (internal quotation marks omitted).

Here, Plaintiff's remaining Title VII claim alleges that Defendant discriminated against him because of his race and describes several allegedly discriminatory events in his employment, including his suspensions and termination. These allegations concern prototypically discrete acts not subject to the continuing violation exception. *See id*. at 723–24. Accordingly, any claims based upon events that occurred more than 300 days before Plaintiff filed his EEOC charge are time-barred. *See Bass*, 746 F.3d at 839. Plaintiff filed his EEOC charge on May 24, 2016, [34] ¶ 5, so his Title VII discrimination claim encompasses only actions taken by Defendant after July 29, 2015. Plaintiff's complaint suggests that this determination preserves his claim as to his discharge, but leaves unclear whether he may advance claims based upon his 2015 suspension. Should discovery reveal that the suspension occurred before July 29, 2015, it cannot serve as a basis for Plaintiff's Title VII discrimination claim. *See Bass*, 746 F.3d at 839.

### 2. Section 1981 Claims

Plaintiff's Section 1981 claims have a four-year statute of limitations, "running from the date of the alleged unlawful activity to the date" he filed this

suit. *Johnson v. Johnson & Johnson*, 67 F. Supp. 3d 1001, 1009 (N.D. Ill. 2014) (citing *Jones v. R.R. Donnelley & Sons Co.*, 541 U.S. 369, 382 (2004); *Smith v. Bray*, 681 F.3d 888, 896 n.2 (7th Cir. 2012)). Plaintiff sued Defendant on September 12, 2016, [1], so his Section 1981 claims may include events after September 12, 2012.

Plaintiff does not contest this rule or its application. *See* [43] at 10–11. Plaintiff does dispute Defendant's contention that all of Plaintiff's undated allegations must be time-barred. *See id.*; [39] at 9. Nevertheless, Defendant offers no authority that supports its argument and this Court rejects that contention. Of course, should discovery reveal that some act occurred before the four-year limit, that act cannot support Plaintiff's Section 1981 claims.

## C. Failure to State a Claim

### 1. Discrimination

Defendant next contends that Plaintiff insufficiently pleads his Title VII and Section 1981 discrimination claims. [39] at 9, 13. At the pleadings stage, Plaintiff must simply allege that Defendant "instituted a (specified) adverse employment action against" him on the basis of his race. *Lavalais v. Village of Melrose Park*, 734 F.3d 629, 633 (7th Cir. 2013); *see also Flanagan v. Excel Staffing Solutions, LLC*, No. 16-cv-5653, 2018 WL 558499, at *2–3 (N.D. Ill. Jan. 25, 2018) (collecting cases describing the general pleading standard applicable to Title VII and Section 1981 discrimination claims). Plaintiff need not include allegations that would establish "a prima facie case of discrimination" under the relevant methods of proof; indeed, because employers "are familiar with discrimination claims," little information "is required to put the employer on notice of these claims" and satisfy the federal

pleading standards. *Carlson v. CSX Transp.*, 758 F.3d 819, 827 (7th Cir. 2014).

Here, Plaintiff satisfies his burden. He alleges that Defendant took various adverse employment actions against him because of his race, including his suspension and ultimately his discharge. *See, e.g.*, [34] ¶¶ 34–37, 49–56, 58–59. Plaintiff also included additional allegations of racially charged comments and conduct, which bolster his claims. *See Carlson*, 758 F.3d at 827. Thus, Plaintiff more than satisfies his "minimal" burden at the pleadings stage. *Clark v. Law Office of Terrence Kennedy, Jr.*, 709 F. App'x 826, 828 (7th Cir. 2017).

### 2.     Hostile Work Environment

To state a hostile work environment claim under Section 1981, Plaintiff must allege facts showing that: (1) his work environment was subjectively and objectively offensive; (2) the cause of his harassment was his race; (3) the challenged conduct was severe or pervasive; and (4) there is a basis for employer liability. *See Yancick v. Hanna Steel Corp.*, 653 F.3d 532, 544 (7th Cir. 2011) (noting that the same analysis applies to Title VII and Section 1981 hostile work environment claims). To determine whether a work environment is objectively hostile, courts consider "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993).

Here, Plaintiff alleges that throughout his employment his coworkers and supervisors "intentionally embarrassed, ridiculed, insulted, and demeaned" him. [34] ¶ 14. Plaintiff sets out numerous illustrative comments and interactions with

his bosses and coworkers to support this general claim, including racially-charged epithets like "cotton picking" and "boy." *See id*. ¶¶ 22, 40. One coworker, Pam, singled out Plaintiff with such hostility that Plaintiff assumed extra tasks to avoid interacting with her. *See id*. ¶¶ 18–21. Plaintiff alleges that these and other episodes happened because of his race. *See, e.g., id*. ¶ 20. In at least that instance, Plaintiff's allegations demonstrate a discriminatory change in the terms and conditions of his employment. *See Ellis v. CCA of Tenn. LLC*, 650 F.3d 640, 648 (7th Cir. 2011). Plaintiff's complaint thus answers the "basic questions" required at the pleadings stage: the type of discrimination (race); who engaged in it (his coworkers and supervisors); and when it occurred (throughout his employment). *Huri v. Office of the Chief Judge of the Circuit Court of Cook Cnty.*, 804 F.3d 826, 834 (7th Cir. 2015). It is "premature at the pleadings stage to conclude just how abusive" Plaintiff's work environment was, but he alleges sufficient facts to show that a plausibly actionable environment existed. *Id*.

Finally, Plaintiff's allegations encompass his supervisors, as well as claims that on numerous occasions his supervisors witnessed his coworkers' misconduct and failed to act. *See, e.g.*, [34] ¶¶ 19, 23, 40. At this early stage, such claims permit the plausible inference that Defendant negligently failed to "take reasonable steps to discover and remedy harassment," which provides an adequate basis for employer liability. *Cooper-Schut v. Visteon Auto. Sys.*, 361 F.3d 421, 426 (7th Cir. 2004). Accordingly, this Court denies Defendant's motion to dismiss as to Plaintiff's Section 1981 hostile work environment claim.

# IV. Conclusion

This Court partially grants and partially denies Defendant's motion to dismiss [38]. Plaintiff's claims for discrimination under Title VII and Section 1981 may proceed, along with his claim for a hostile work environment under Section 1981. This Court dismisses Plaintiff's Title VII hostile work environment claim and any claims arising from acts before the relevant limitations periods with prejudice. All dates and deadlines stand.

Dated: May 22, 2018

Entered:

John Robert Blakey
United States District Judge